# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2016 Term

**FILED**
**February 9, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0558

## STATE OF WEST VIRGINIA EX REL. WHEELING HOSPITAL, INC.; DAVID A. GHAPHERY, M.D.; AND A.D. GHAPHERY PROFESSIONAL ASSOCIATION,
### Petitioners

## V.

## HONORABLE RONALD E. WILSON, JUDGE OF THE CIRCUIT COURT OF OHIO COUNTY, AND STEPHANIE MILLS,
### Respondents

Petition for Writ of Prohibition

**WRIT GRANTED AS MOULDED**

Submitted: October 7, 2015
Filed: February 9, 2016

Edmund L. Olszewski, Jr.
Dickie, McCamey & Chilcote, P.C.
Pittsburgh, Pennsylvania
Attorney for the Petitioner,
Wheeling Hospital, Inc.

Christopher J. Regan
J. Zachary Zatezalo
Meaghan L. Tague
Bordas & Bordas, PLLC
Wheeling, West Virginia

Patrick S. Casey
D. Kevin Coleman
Casey & Chapman, PLLC
Wheeling, West Virginia
Attorneys for the Petitioners,
David A. Ghaphery, M.D., and
A.D. Ghaphery Professional Association

Attorneys for the Respondent,
Stephanie Mills

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      To determine whether a particular document is protected by the peer review privilege codified at W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), a reviewing court must ascertain both the exact origin and the specific use of the document in question. Documents that have been created exclusively by or for a review organization, or that originate therein, and that are used solely by that entity in the peer review process are privileged.  However, documents that either (1) are not created exclusively by or for a review organization, (2) originate outside the peer review process, or (3) are used outside the peer review process are not privileged.

2.      Where documents sought to be discovered are used in the peer review process but either the document, itself, or the information contained therein, is available from an original source extraneous to the peer review process, such material is discoverable from the original source, itself, but not from the review organization that has used it in its deliberations.

3.      The party seeking the protections of the peer review privilege bears the burden of establishing its applicability by more than a mere assertion of privilege.

4.     A party wishing to establish the applicability of the peer review privilege, set forth at W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), should submit a privilege log which identifies each document for which the privilege is claimed by name, date, and custodian. The privilege log also should contain specific information regarding (1) the origin of each document, and whether it was created solely for or by a review committee, and (2) the use of each document, with disclosures as to whether or not the document was used exclusively by such committee. Finally, the privilege log should provide a description of each document and a recitation of the law supporting the claim of privilege.

**Davis, Justice:**

The petitioners herein, Wheeling Hospital, Inc.; David A. Ghaphery, M.D.; and A.D. Ghaphery Professional Association (collectively, "Wheeling Hospital"), seek a writ of prohibition to preclude the enforcement of an order entered February 26, 2015, by the Circuit Court of Ohio County. By that order, the circuit court directed Wheeling Hospital to disclose to the respondent herein, Stephanie Mills ("Ms. Mills"), various documents it claimed to be subject to the peer review privilege. Before this Court, Wheeling Hospital asserts that the documents ordered to be disclosed are protected by the peer review privilege set forth in W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015).[1] Ms. Mills rejects such arguments and contends that the circuit court properly ordered the subject documents be disclosed. Upon our review of the parties' arguments, the appendix record presented for our consideration, and the pertinent authorities, we grant as moulded the requested writ of prohibition. Specifically, we find that certain of the challenged documents, including those comprising Dr. Ghaphery's request to renew his staff privileges, as well as other documents, are specifically protected by the peer review privilege. With respect to the remaining challenged

---

[1]For further treatment of W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), see Section III, *infra*.

Wheeling Hospital additionally contends that the subject documents are protected by the nondisclosure provisions of the Health Insurance Portability and Accountability Act ("HIPAA") contained in 45 C.F.R. § 164.514(b)(2)(i) (2013) (Repl. Vol. 2014), and, further, that such documents are not relevant under rules governing evidence and discovery. In light of our disposition of the case, we deem further consider of these arguments to be premature in the current posture of the case *sub judice*. *See infra* note 9.

1

documents, we conclude that the circuit court did not conduct a thorough *in camera* review of such documents and that Wheeling Hospital did not provide a privilege log with sufficient detail to permit the circuit court to determine whether such documents are protected by the peer review privilege. Therefore, we prohibit the enforcement of the circuit court's February 26, 2015, order, and further direct Wheeling Hospital to submit a revised privilege log addressing the remaining documents and the circuit court to conduct further *in camera* proceedings in accordance with this opinion.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This case originated in 2011 when Ms. Mills consulted with Dr. Ghaphery for treatment of a medical condition. On October 13, 2011, Ms. Mills had a thyroidectomy,[2] performed by Dr. Ghaphery at Wheeling Hospital. Following the surgery, Ms. Mills had difficulty breathing and swallowing, and was unable to talk. Ms. Mills then consulted with a specialist who informed her that the nerves surrounding her thyroid gland had been severed during her thyroidectomy thus resulting in bilateral vocal cord paralysis.

Ms. Mills thereafter filed suit in the Circuit Court of Ohio County against the petitioners herein, Dr. Ghaphery; A.D. Ghaphery Professional Association; and Wheeling

---

[2]Through the thyroidectomy, Dr. Ghaphery removed Ms. Mills' thyroid gland.

2

Hospital, Inc., asserting claims for medical negligence; lack of informed consent; and negligent credentialing. Ms. Mills also sought discovery from the named defendants, including documents regarding Dr. Ghaphery's surgeries that he had performed at Wheeling Hospital, and whether such procedures had been accompanied by complications or infections or whether those patients subsequently required readmission to the hospital. Wheeling Hospital failed to respond to Ms. Mills' discovery requests. Ultimately, Ms. Mills filed a motion to compel, which the circuit court granted, ordering Wheeling Hospital to produce a privilege log of the documents it claimed to be exempt from disclosure. The parties reached agreement regarding disclosure of certain of the documents, but approximately 350 documents remained in dispute.

The circuit court then conducted an *in camera* review of the remaining disputed documents, which Wheeling Hospital claimed were protected by the peer review privilege,[3] HIPAA,[4] and/or evidentiary and discovery rules regarding relevancy.[5] By order entered February 26, 2015, the circuit court ordered the majority of the disputed documents to be disclosed. In so ruling, the circuit court observed that, while the documents ordered to be disclosed may not be relevant in a typical medical malpractice action, Ms. Mills' addition of

---

[3] *See supra* note 1 and accompanying text.

[4] *See* note 1, *supra*.

[5] *See supra* note 1.

3

a negligent credentialing claim either made such documents relevant or, in view of the liberal discovery rule, such evidence "is 'reasonably calculated to lead to the discovery of admissible evidence,'" and, thus, "it is difficult for a judge to draw the line between what may lead to the discovery and what is clearly relevant. *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 218 W. Va. 593, 597, 625 S.E.2d 355, 359 (2005)." Accordingly, the circuit court determined that the subject documents should be disclosed because they would either be relevant to Ms. Mills' claims or to Wheeling Hospital's and Dr. Ghaphery's defense thereof.

The court additionally relied upon Ms. Mills' representations that the subject documents satisfied the "original source" exception to the peer review privilege because they "were not created solely for Wheeling Hospital[']s crediting committee but are otherwise available from original sources extraneous to that committee." The court explained further that "these documents contain information that the hospital gathers in the ordinary course of its business, or pursuant to regulations, that the crediting committee then uses in its work." Finally, to address the HIPAA and chilling effect of disclosure concerns raised by Wheeling Hospital, the circuit court limited the discoverable documents to those documents pertaining to Dr. Ghaphery, his surgeries, and their outcomes and which were generated prior to and on October 13, 2011, *i.e.*, the date of Ms. Mills' surgery; required that identifying information for Dr. Ghaphery's other patients be redacted from the disclosed documents; and refused to

4

authorize the disclosure of documents relating to medical procedures performed by other physicians in the hospital. Applying these criteria, the circuit court ordered that the majority of the contested documents be disclosed, while finding that a few such documents were not relevant and thus were not subject to disclosure.

Following this adverse ruling, Wheeling Hospital requests this Court to issue a writ of prohibition to prevent the circuit court from enforcing its February 26, 2015, disclosure order.

## II.

## STANDARD FOR ISSUANCE OF WRIT

In the instant proceeding, Wheeling Hospital requests this Court to issue a writ of prohibition. As an extraordinary remedy, we have cautioned that we reserve such relief for exceptional cases. *See State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996) ("Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies . . . . As extraordinary remedies, they are reserved for really extraordinary causes." (internal quotations and citations omitted)). Therefore, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233

5

S.E.2d 425 (1977). *Accord* Syl. pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979) ("[T]his Court will use prohibition . . . to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014). In this vein, we typically have found challenges to discovery orders involving potentially privileged material to constitute such an exceptional case. *See, e.g.*, Syl. pt. 3, *State ex rel. United Stated Fid. & Guar. Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995) ("When a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule[s] 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate.").

When ruling on a petition for a writ of prohibition, our determination of the merits of the petition is guided by the multi-faceted analysis adopted by our prior holding in Syllabus point 4 of *State ex rel. Hoover v. Berger,* 199 W. Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the

6

petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

In light of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

At issue in the case *sub judice* is whether certain documents are subject to disclosure or whether they are protected by the peer review privilege; HIPAA's privacy concerns; or relevancy considerations. We begin by considering the peer review privilege.

Wheeling Hospital first contends that the subject documents are exempted from disclosure by the West Virginia peer review privilege. In support of its argument, Wheeling Hospital asserts that the documents ordered to be disclosed contain confidential information from Dr. Ghaphery's credentialing file and that such disclosure will have a "chilling effect" on the peer review process, itself. *Citing Young v. Saldanha*, 189 W. Va. 330, 431 S.E.2d 669 (1993). Wheeling Hospital further argues that this Court's prior precedent prohibits the

7

disclosure of documents considered or generated by a hospital's credentialing committee that evaluates an application or a request to renew a physician's staff privileges, and, thus, those documents coming within this category are exempt from disclosure. *Citing State ex rel. Charles Town Gen. Hosp. v. Sanders*, 210 W. Va. 118, 125-26, 556 S.E.2d 85, 92-93 (2001). Finally, Wheeling Hospital contends that the subject documents are protected by the peer review privilege insofar as they "are used by the Hospital for quality assurance, monitoring and control and are considered by the Department of Medical Affairs/Credentialing for appointment/reappointment purposes."

Ms. Mills responds that the documents in issue were not created solely for the credentialing process but rather encompass quality control information that the Hospital collects and that can be queried at any time. With specific respect to the reappointment profiles, Ms. Mills contends that the data comprising these records is collected and maintained by the Hospital because it is required by law to do so and to report such information to its regulatory body and the West Virginia Board of Medicine for physician licensing purposes. As for the summary reports, procedure totals, general surgery interventions, physician specific reports, and remaining categories of documents, Ms. Mills suggests that such reports likely were not generated solely for the Hospital's credentialing process, but rather were created as business records, for quality control reasons, to satisfy regulatory obligations, to gather claims denial information from insurance companies, and

8

for similar purposes. Thus, Ms. Mills argues, these documents were not created exclusively for or by the credentialing committee, did not originate in that body, and are available from original sources extraneous to the peer review process. Finally, Ms. Mills asserts that Wheeling Hospital has not fulfilled its burden of demonstrating good cause sufficient to preclude the documents' disclosure pursuant to either Rule 26(c) of the West Virginia Rules of Civil Procedure or *State ex rel. Shroades v. Henry*, 187 W. Va. 723, 421 S.E.2d 264 (1992)..

The peer review privilege has been adopted by statute in this State and generally protects peer review proceedings conducted by a review organization. We previously have observed that "[t]he enactment of West Virginia Code §§ 30-3C-1 to -3 (1993) very clearly evinces a public policy encouraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care." Syl. pt. 2, *Young v. Saldanha*, 189 W. Va. 330, 431 S.E.2d 669 (1993). *Accord Mahmoodian v. United Hosp. Ctr., Inc.*, 185 W. Va. 59, 65, 404 S.E.2d 750, 756 (1991). *See also State ex rel. Shroades v. Henry*, 187 W. Va. 723, 727, 421 S.E.2d 264, 268 (1992) ("The peer review privilege represents a legislative choice between medical staff candor and the plaintiff's access to evidence." (footnote omitted)); *Daily Gazette Co., Inc. v. West Virginia Bd. of Med.*, 177 W. Va. 316, 322, 352 S.E.2d 66, 71 (1986) ("[I]t seems

9

evident that the legislature enacted these provisions with the ultimate purpose of improving the quality of medical care provided in the hospitals of this State.").

In recognizing this statutory privilege, the Legislature has defined "peer review" as "the procedure for evaluation by health care professionals of the quality and efficiency of services ordered or performed by other health care professionals, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review and patient safety review." W. Va. Code § 30-3C-1 (2004) (Repl. Vol. 2015). Additionally,

> "[r]eview organization" means any committee or organization engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a medical audit committee, a health insurance review committee, a health maintenance organization review committee, a hospital medical, dental and health service corporation review committee, a hospital plan corporation review committee, a professional health service plan review committee or organization, a dental review committee, a physicians' advisory committee, a podiatry advisory committee, a nursing advisory committee, any committee or organization established pursuant to a medical assistance program, the Joint Commission on Accreditation of Health Care Organizations or similar accrediting body or any entity established by such accrediting body or to fulfill the requirements of such accrediting body, any entity established pursuant to state or federal law for peer review purposes, and any committee established by one or more state or local professional societies or institutes, to gather and review information relating to the care and treatment of patients for the purposes of: (i) Evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within

10

reasonable bounds the cost of health care. It shall also mean any hospital board committee or organization reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto, and any professional standards review organizations established or required under state or federal statutes or regulations.

*Id.*

The statutory peer review privilege, itself, is set forth in W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), and provides as follows:

The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not be asked about his testimony before such an organization or opinions formed by him as a result of said organization hearings: Provided, however, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section: Provided further, That upon

11

further review by any other review organization, upon judicial review of any finding or determination of a review organization or in any civil action filed by an individual whose activities have been reviewed, any testimony, documents, proceedings, records and other evidence adduced before any such review organization shall be available to such further review organization, the court and the individual whose activities have been reviewed. The court shall enter such protective orders as may be appropriate to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court.

*Id.* Interpreting this statutory language, we previously have held that

> *W. Va. Code*, 30-3C-3 [1980] provides that "[t]he proceedings and records of a review organization shall be confidential . . . Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such [a review] organization. . . ." The language of the statute grants a privilege to all the records and proceedings of a review organization, but no privilege attaches to information, documents or records considered by a review organization if the material is "otherwise available from original sources."

Syl. pt. 3, *State ex rel. Shroades v. Henry*, 187 W. Va. 723, 421 S.E.2d 264. In other words, the privilege allows some documents that are considered during the peer review process to be disclosed, provided they come within the provision's noted exceptions:

> Pursuant to the plain language of W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 1998), information, documents, and records ordinarily protected by the peer review privilege lose their specter of confidentiality and may be accessed by third parties when (1) said materials are "otherwise available from original sources" or (2) "an individual [has] execute[d] a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions."

12

Syl. pt. 4, *State ex rel. Brooks v. Zakaib*, 214 W. Va. 253, 588 S.E.2d 418 (2003).

Furthermore, we have recognized that the definition of "review organization," itself, provides additional guidance as to the scope of the privilege. In this regard, we specifically have held that

> [a] hospital committee that is responsible for considering applications for admission to its staff and for issuing staff privileges or credentials in accordance therewith is a "review organization" within the definition of W. Va. Code § 30-3C-1 (1975) (Repl. Vol. 1998). As a "review organization," such hospital committee may also avail itself of the health care peer review privilege, codified in W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 1998), provided it satisfies the requisite criteria for the assertion of that privilege.

Syl. pt. 5, *State ex rel. Charles Town Gen. Hosp. v. Sanders*, 210 W. Va. 118, 556 S.E.2d 85 (2001). In accordance with this scope of the privilege, then, it necessarily follows that "[a]n application for the issuance or renewal of staff privileges that is created solely for consideration by a hospital credentialing committee is protected by the health care peer review privilege pursuant to W. Va. Code § 30–3C–3 (1980) (Repl. Vol.1998)." Syl. pt. 8, *Sanders*, 210 W. Va. 118, 556 S.E.2d 85.

However, "[b]lanket assertions of privilege are generally not sufficient to invoke the peer review privilege." Thomas J. Hurney, Jr. & Rob J. Aliff, *Medical Professional Liability in West Virginia*, 105 W. Va. L. Rev. 369, 444 (2003). Rather, a party

wishing to avail him/herself of the protections afforded by the peer review privilege must prove it applies to the documents he/she seeks to shield from discovery. "The determination of which materials are privileged under *W. Va. Code,* 30–3C–1 [1975] *et seq.* is essentially a factual question[,] and the party asserting the privilege has the burden of demonstrating that the privilege applies." Syl. pt. 2, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264.

While these authorities all provide significant guidance as to the precise parameters of the peer review privilege, the facts of the case *sub judice* clearly demonstrate that this black and white line of demarcation is tinged with many, many shades of gray uncertainty. Although the party asserting the protections afforded by the privilege bears the burden of demonstrating its applicability by "[m]ore than mere assertions,"[6] it is clear to us that we have not yet scrupulously considered all the myriad scenarios in which peer review documents may be generated or considered. Our review of the challenged documents herein signifies an urgent need for more precise guidelines as to which documents are protected and which documents are subject to disclosure. Therefore, we now undertake to provide a more definitive explanation as to which documents referenced in a peer review proceeding are required to be protected and which of those documents are permitted to be disclosed because they are not subject to the protections of the peer review privilege.

---

[6]*State ex rel. HCR Manorcare, LLC v. Stucky*, 235 W. Va. 677, 686, 776 S.E.2d 271, 280 (2015) (citation omitted).

14

It goes without saying that documents using data that is generated exclusively for or by a peer review organization for its sole use are protected by the peer review privilege. Moreover, "[m]aterial that originates in a review organization remains privileged even if held by a non-review organization." *Shroades*, 187 W. Va. at 728, 421 S.E.2d at 269 (footnote omitted). Similarly, documents that contain mental impressions, analyses, and/or work product of the review organization are exempt from disclosure. Documents coming within this "clearly privileged" category would include the credentialing files we found to be protected in *Sanders*. *See* Syl. pt. 8, *Sanders*, 210 W. Va. 118, 556 S.E.2d 85.

On the other end of the spectrum are documents that are clearly subject to disclosure because they were not generated as part of the peer review process or because the peer review statute, itself, specifically exempts them from the rigors of the privilege. Thus, "material that originates in a non-review organization does not become privileged after presentation to a review organization." *Shroades*, 187 W. Va. at 728, 421 S.E.2d at 269. Similarly, information considered during the peer review process is not privileged if it either is available from original sources extraneous to the peer review process or discoverable because the document's claim of privilege has been waived. *Accord* Syl. pt. 4, *State ex rel. Brooks v. Zakaib*, 214 W. Va. 253, 588 S.E.2d 418. *See also Sanders*, 210 W. Va. at 126, 556 S.E.2d at 93 ("[R]ecords, documents, and the like that are available from original sources extraneous to the credentialing process are not privileged and, thus, are subject to discovery."

15

(citations omitted)); Syl. pt. 3, *Young*, 189 W. Va. 330, 431 S.E.2d 669 ("To effect a waiver of the privilege of confidentiality which attends information and records properly the subject of health care peer review under West Virginia Code §§ 30-3C-1 to -3 (1993), the Legislature has required that an individual must formally indicate his intent to waive this confidentiality by executing a valid waiver."). *Cf.* Syl. pt. 3, *Daily Gazette Co. v. West Virginia Bd. of Med.*, 177 W. Va. 316, 352 S.E.2d 66 ("To the extent that any hospital peer review information is brought before the West Virginia Board of Medicine under W. Va. Code, 30-3-14(*o*) (1986), after probable cause to substantiate charges of disciplinary disqualification is found, the public is entitled to such information."). *But see* Syl. pt. 5, *Brooks*, 214 W. Va. 253, 588 S.E.2d 418 ("Where the privilege encapsulating peer review materials has been lifted because such information is available from an original source or the privilege has been waived, such materials may still be rendered inaccessible if the tribunal in which such information was introduced or reviewed has entered a protective order in accordance with W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 1998) to guard against their disclosure.").

The difficulty of distinction arises when documents are an amalgamation of the two foregoing categories. Which category contains documents that are considered by a peer review organization but that have not necessarily been created specifically for or by that entity? What about compilations of existing data that are used by a peer review organization? The answer to these questions is simple: "the origin of the document

16

determines if it is privileged." *Shroades*, 187 W. Va. at 728, 421 S.E.2d at 269. "In order

to determine whether the [peer review] privilege . . . applies to a particular circumstance, the

courts must determine whether the records sought to be discovered arose from a peer review

proceeding to which the privilege applies." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 536

(Tenn. 2010) (citations and footnotes omitted). Thus,

> [i]n determining whether a medical peer review privilege applies in a particular circumstance, we look to the way in which a document was created and the purpose for which it was used, not . . . its content. Therefore, the proper inquiry as to whether a document qualifies for protection . . . is whether it was created by, for, or otherwise as a result of a medical peer review committee. Under that formulation, while the work product of the various committees involved in credentialing . . . –e.g., minutes from meetings, reports, or recommendations generated by or for the committees—are protected . . . , documents used by such committees are not necessarily similarly protected.

*Board of Registration in Med. v. Hallmark Health Corp.*, 454 Mass. 498, 509-10, 910 N.E.2d

898, 907 (2009) (internal quotations and citations omitted).


Therefore, the test to apply to determine whether the peer review privilege

shields a particular document from disclosure is whether the document was created

exclusively by or solely for a review organization.

> The peer review privilege . . . applies to information that was created at the behest of a peer review committee. It covers information gathered or prepared by the members of the committee and information gathered or prepared by others at the committee's request. However, for the privilege to apply, the

17

information must be used for peer review purposes. If it originated outside the peer review process, it is not privileged.

*Powell v. Community Health Sys., Inc.*, 312 S.W.3d 496, 510 (Tenn. 2010) (citations omitted).

Where, however, the peer review committee merely uses information that has been generated or supplied by a source external to the committee, such information is discoverable from the *original, external sources*, but not from the peer review committee, itself. *See* W. Va. Code § 30-3C-3; Syl. pt. 4, *Brooks*, 214 W. Va. 253, 588 S.E.2d 418; Syl. pt. 3, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264. In this regard, the privilege

> does not prohibit discovery from alternative sources. For example, a medical peer review committee may have obtained and reviewed a copy of a letter from a physician, but that document is not thereby clothed with a privilege if its author or recipient share it with individuals or entities that do not come under the [peer review privilege]. Or, a medical committee may review documents that are within the public domain. *See McGee v. Bruce Hosp. Sys.*, 312 S.C. 58, [62,] 439 S.E.2d 257, 260 (1993) (information that is available from a source other than the committee does not become privileged simply by being acquired by the review committee); *Cruger v. Love*, 599 So. 2d 111, 114 (Fla. 1992) (if the applicant obtains a document from a source that is not within the scope of the privilege, the document is not privileged). Further, routine business records of a health-care entity such as a patient's medical records do not become privileged and are not shielded from discovery simply because a medical peer review committee has reviewed or considered them.

*Irving Healthcare Sys. v. Brooks*, 927 S.W.2d 12, 18 (Tex. 1996). Stated otherwise,

18

the source of nonprivileged material cannot be the peer review committee or any other entity or individual included within the protections of the committee privileges. Rather, a party must seek the documents and communications from a nonprivileged source. . . . [The] privilege [permits] only the withholding of the fact that ordinary business records were reviewed by the committee, not the ordinary business records themselves. The peer review privilege protects the products of the peer review process: reports, records (including those produced for the committee's review as part of the investigative review process), and deliberations.

*In re Living Ctrs. of Texas, Inc.*, 175 S.W.3d 253, 260 (Tex. 2005) (citations omitted).

Moreover, merely because a review organization uses, in its deliberative process, records kept by a medical facility in the ordinary course of business does not mean that all such facility records are then sequestered from the grasp of discovery.

Documents that may be provided to a peer review committee, but were not originally prepared exclusively for the committee and are also accessible to staff of the facility in their capacities as employees or managers of the facility, separate and apart from any role on a review committee, are not in any way protected by the privilege. The privilege attaches only to the files maintained by and for the committee, not to all files in a facility.

*Large v. Heartland-Lansing of Bridgeport Ohio, LLC*, 995 N.E.2d 872, 884-85 (Ohio Ct. App. 2013) (citations omitted). In other words,

[t]he records and proceedings of the peer review committee are not coextensive with all of the records of the facility in which the committee operates. The fact that copies of certain material may have been provided to a committee does not extend the protection afforded committee proceedings, and committee

19

generated records, to material generated outside of the committee. If a health care entity itself is the original source, it cannot shield documents from disclosure just by circulating them during peer review proceedings.

*Id.*, 995 N.E.2d at 883-84 (internal quotations and citations omitted).

It bears repeating, though, that "documents that are otherwise discoverable do not become privileged merely because they have been dipped in the waters of a peer review committee file." *Large*, 995 N.E.2d at 886. *Accord Smith v. Cleveland Clinic*, 197 Ohio App. 3d 524, 532, 968 N.E.2d 41, 47 (2011) ("[M]erely labeling a committee or a document 'peer review' is insufficient to meet the burden of proving that the privilege applies to the requested information."); *In re Living Ctrs. of Texas, Inc.*, 175 S.W.3d at 257 ("[S]imply passing a document through a peer review committee does not make it privileged." (citation omitted)). Neither is "[t]he peer-review privilege . . . a generalized cloak of secrecy over the entire peer-review process. If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee." *Smith*, 197 Ohio App. 3d at 529, 968 N.E.2d at 45 (internal quotations and citations omitted). Rather,

> [t]he peer review privilege is intended to extend far enough to foster candid internal discussions for the purpose of making improvements in the quality of care, but not so far as to permit the concealment of routinely accumulated information. The privilege does not prevent discovery of material that has been presented to a hospital committee if it is otherwise

20

available and offered or proved by means apart from the record of the committee.

*In re Living Ctrs.*, 175 S.W.3d at 260 (internal quotations and citations omitted). Therefore, "[t]he fact that copies of certain material may have been provided to a committee does not extend the protection afforded committee proceedings, and committee generated records, to material generated outside of the committee." *Bailey v. Manor Care of Mayfield Heights*, 2013-Ohio-4927, ¶ 24, 4 N.E.3d 1071, 1078 (Ct. App. 2013) (internal quotations and citation omitted).

Above all, however,

[t]he party seeking privilege must . . . establish that the documents being sought were prepared by or for the use of a peer review committee. Stated another way, the party seeking privilege is required to show that each of the documents over which it asserts the privilege is a record within the scope of a peer review committee. In so doing, the party seeking privilege must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer-review committee's records.

*Bailey*, 2013-Ohio-4927, at ¶ 26, 4 N.E.2d at 1078-79 (internal quotations and citations omitted). Furthermore, to establish entitlement to the peer review privilege, the party seeking its protections must

begin [by] establishing that a peer review committee was in existence and that the facility actually investigated the incident or incidents that the disputed documents or information reference. A broad assertion that the committee may rely on a particular type of document or information, if the document was

21

not generated by or under the direction of the committee, is insufficient. For the privilege to attach, the committee must have used or relied on the specific document or information the facility seeks to exclude, and the particular document or information must not be something that is simultaneously available to employees of the facility in the course of their duties separate and apart from any peer review responsibilities.

*Large*, 995 N.E.2d at 884 (citations omitted).

Consolidating these various principles into a single, cohesive framework to provide precise parameters to courts reviewing allegedly privileged documents, we therefore hold that, to determine whether a particular document is protected by the peer review privilege codified at W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), a reviewing court must ascertain both the exact origin and the specific use of the document in question. Documents that have been created exclusively by or for a review organization, or that originate therein, and that are used solely by that entity in the peer review process are privileged. However, documents that either (1) are not created exclusively by or for a review organization, (2) originate outside the peer review process, or (3) are used outside the peer review process are not privileged. We further hold that, where documents sought to be discovered are used in the peer review process but either the document, itself, or the information contained therein, is available from an original source extraneous to the peer review process, such material is discoverable from the original source, itself, but not from the review organization that has used it in its deliberations. Finally, we hold that the party

22

seeking the protections of the peer review privilege bears the burden of establishing its applicability by more than a mere assertion of privilege.

Applying these holdings to the facts of the case *sub judice*, we are left with the definite and firm conviction that the circuit court clearly erred when it conducted its *in camera* review because several of the challenged documents at issue herein are protected by the peer review privilege. A mere cursory review of the subject documents shows that several of the documents are protected as material that has been created specifically for and that is used exclusively by the peer review committee: Dr. Ghaphery's applications for renewal of his staff privileges at Wheeling Hospital. *See* Syl. pt. 8, *Sanders*, 210 W. Va. 118, 556 S.E.2d 85. In particular, Document Numbers 168-170, 297-298, 650-651, and 817 are all applications for the renewal of Dr. Ghaphery's staff privileges; as such, they are protected by the peer review privilege and should not have been ordered to be disclosed to Ms. Mills. Accordingly, we grant the requested writ of prohibition as moulded and prohibit the circuit court from enforcing that portion of its order that required Wheeling Hospital to disclose these four documents in discovery.

Further review of the challenged documents leads to the conclusion that still others, that the circuit court has ordered to be disclosed, are protected by the peer review privilege because they come within the statutory definition of the purpose for which a review

23

organization may be established and are materials that the peer review committee either created or requested be generated for the committee's exclusive use. *See* W. Va. Code § 30-3C-1. Within this category, two distinct types of documents emerge: (1) documents that "[e]valuat[e] and improve[e] the quality of health care rendered" and (2) materials that "establish[] and enforc[e] guidelines designed to keep within reasonable bounds the cost of health care." *Id.* Documents that fall within the quality of health care classification include the committee's analysis of physicians' procedures and their outcomes. As quality control documents, Document Numbers 214, 224-225, 226-227, 234-242, 347, 354-365, 471-474, 476, 478-485, 546, 550-552, 218-219, and 489-490 are protected by the peer review privilege. Moreover, still other documents involve the committee's evaluation of health care costs related to various patients' care outcomes. Therefore, Document Numbers 1000, 1001, and 1002 are protected from disclosure by the peer review privilege because they involve determinations regarding the cost of health care. Accordingly, we further prohibit the circuit court from enforcing that portion of its order requiring these two groups of documents to be disclosed.

With regard to the remaining challenged documents, we are unable to determine whether they are protected by the peer review privilege because we lack the crucial information determinative of the applicability of the privilege: (1) the origin of the documents, *i.e.*, whether they were created exclusively for or by a peer review committee,

24

and (2) their specific use, *i.e.*, whether they were used solely by the peer review committee. *See Shroades*, 187 W. Va. at 729-30, 421 S.E.2d at 270-71 (indicating that peer review privilege log should contain information regarding document's "source and reason for creation"). Without these crucial pieces of information, we are "'greatly at sea without a chart or compass.'" *State ex rel. HCR Manorcare, LLC v. Stucky*, 235 W. Va. 677, 687, 776 S.E.2d 271, 281 (2015) (quoting *Workman v. Workmen's Comp. Comm'r*, 160 W. Va. 656, 662, 236 S.E.2d 236, 240 (1977)).

On the one hand, it could be said that the party bearing the burden of establishing the privilege's applicability has failed to carry its burden. *See* Syl. pt. 2, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264. On the other hand, while this Court previously has instructed parties as to the information that should be included in a privilege log attempting to establish the applicability of the peer review privilege, we have not specified that both (1) the origin of the document, with specific information as to whether it was created solely for or by a review committee, and (2) the document's use, with disclosures as to whether or not it was used exclusively by such committee, also are vital details necessary for a determination of privileged status. In this regard, we previously have recommended only that "the party claiming the document is privileged should identify the document by name, date, custodian, source and reason for creation." *Shroades*, 187 W. Va. at 729, 421 S.E.2d at 270. From the foregoing authorities and our holdings herein, it is apparent that a

25

privilege log seeking to protect documents under the peer review privilege should also include this additional, critical information. Therefore, we hold that a party wishing to establish the applicability of the peer review privilege, set forth at W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), should submit a privilege log which identifies each document for which the privilege is claimed by name, date, and custodian. The privilege log also should contain specific information regarding (1) the origin of each document, and whether it was created solely for or by a review committee, and (2) the use of each document, with disclosures as to whether or not the document was used exclusively by such committee. Finally, the privilege log should provide a description of each document and a recitation of the law supporting the claim of privilege.

Insofar as Wheeling Hospital's privilege log provided information about the "author or origin of document," we cannot ascertain, from the use of the disjunctive "or,"[7] whether the information in that field identifies the document's author or its origin in terms of the location from which the document is being provided. Neither can we determine from the privilege log, or the documents, themselves, whether the subject documents were used exclusively by the peer review committee or whether they also were used for other, external

_____

[7]"We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." *State v. Rummer*, 189 W. Va. 369, 377, 432 S.E.2d 39, 47 (1993) (internal quotations and citations omitted). *Accord State v. Wilkerson*, 230 W. Va. 366, 372, 738 S.E.2d 32, 38 (2013) ("The use of the word 'or' indicates an alternative choice.").

26

purposes. Given this dearth of information, we cannot definitively say whether the circuit court erred by ordering the remaining documents to be disclosed because we do not have enough information to guide our review thereof vis-à-vis the peer review privilege. Therefore, we grant as moulded the requested writ of prohibition regarding the remaining challenged documents, and we prohibit the circuit court from enforcing its order requiring the remaining challenged documents to be disclosed. Additionally, we direct the circuit court to conduct further *in camera* proceedings to determine whether the remaining challenged documents are privileged or subject to disclosure.[8] During these further proceedings, Wheeling Hospital should provide a revised privilege log that contains the information detailed in our holdings herein, and the circuit court should conduct a new *in camera* review following its receipt of this additional detail regarding the specific origin and precise use of each of the challenged documents.[9]

---

[8]In rendering this ruling, we wish to make clear that this opinion should, in no way, be construed as an implicit ruling as to the discoverability of the challenged documents returned to the circuit court for further review or the applicability of the peer review privilege thereto. Rather, we find further proceedings to be necessary because we simply cannot tell, one way or the other, whether the subject documents should be protected by the peer review privilege or whether they should be disclosed in discovery.

[9]Given our determination that the privilege log upon which the circuit court based its initial determination of privilege was deficient and that the circuit court should consider the applicability of the peer review privilege anew, we find it premature to address Wheeling Hospital's remaining assignments of error regarding HIPAA and relevancy considerations. We note only that it is apparent from the circuit court's order at issue herein that the court is cognizant of the law in this area, and, during its further proceedings, it should continue to be guided by these authorities. *See* 45 C.F.R. § 164.514(b)(2)(i) (enumerating HIPAA privacy concerns). *See also* W. Va. R. Civ. P. 26(b)(1) ("It is not ground for

(continued...)

**IV.**

**CONCLUSION**

For the foregoing reasons, we grant as moulded the requested writ of prohibition. The Circuit Court of Ohio County is hereby prohibited from enforcing its order of February 26, 2015, insofar as it requires Wheeling Hospital to disclose the documents referenced therein. We find Document Numbers 168-170, 297-298, 650-651, 817, 214, 224-225, 226-227, 234-242, 347, 354-365, 471-474, 476, 478-485, 546, 550-552, 218-219, 489-490, 1000, 1001, and 1002 to be protected by the peer review privilege set forth in W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015). With regard to the remaining documents, we find that the existing privilege log lacks sufficient detail to permit a definitive determination as to whether the peer review privilege shields such documents from disclosure. Accordingly, Wheeling Hospital is directed to submit a revised privilege log containing the information

---

[9](...continued) objection [to discovery] that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."); Syl. pt. 4, in part, *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 218 W. Va. 593, 625 S.E.2d 355 (2005) ("[T]he trial court is required under the provisions of Rule 26(b)(1) of the West Virginia Rules of Civil Procedure to make a preliminary determination of whether the requested information is relevant in that it is admissible or is reasonably calculated to lead to the discovery of admissible evidence."); Syl. pt. 4, in part, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992) ("[U]nder Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence.").

28

identified in the body of this opinion, and, upon receipt thereof, the circuit court is instructed to conduct an *in camera* review to determine whether the remaining documents addressed in its prior opinion are or are not protected by the statutory peer review privilege.

Writ granted as moulded.