556 S.E.2d 85

STATE of West Virginia ex rel. the CHARLES TOWN GENERAL HOSPITAL, dba Jefferson Memorial Hospital, and the Medical Staff of the Charles Town General Hospital, dba Jefferson Memorial Hospital, Petitioners,

v.

The Honorable David H. SANDERS, Judge of the Circuit Court of Berkeley County, Anna Marie Chaffins, and Thomas Chaffins, Jr., Respondents.

No. 29770.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 5, 2001.

Decided Nov. 9, 2001.

P. Gregory Haddad, Esq., Steptoe & Johnson, PLLC, Morgantown, Ancil G. Ramey, Esq., Steptoe & Johnson, PLLC, Charleston, for the Petitioners.

D. Michael Burke, Esq., Burke, Schultz and Harman, Martinsburg, Barry J. Nace, Esq., Paulson & Nace, Washington, District of Columbia, for the Respondents.

Paul T. Farrell, Jr., Esq., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, for Amicus Curiae, West Virginia Trial Lawyers Association.

DAVIS, Justice.

The petitioners herein, the Charles Town General Hospital, doing business as Jefferson Memorial Hospital, and the Medical Staff thereof [hereinafter collectively referred to as "the Hospital" or "Jefferson Memorial Hospital"], request this Court to issue a writ of prohibition to prevent the Circuit Court of Berkeley County from enforcing its order entered March 23, 2001. By that order, the circuit court, ruling in favor of the respondents herein, Anna Marie Chaffins [hereinafter referred to as "Mrs. Chaffins"] and her husband, Thomas Chaffins, Jr. [hereinafter referred to as "Mr. Chaffins"], determined that certain documents held by the Hospital and sought by the Chaffins in their underlying medical malpractice lawsuit were discoverable. In this petition for writ of prohibition, the Hospital claims that the circuit court improperly found that these documents were not protected by the privilege contained in W. Va.Code § 30–3C–3 (1980) (Repl.Vol. 1998) of the West Virginia Health Care Peer Review Organization Protection Act, W. Va. Code § 30–3C–1, *et seq.* Upon a review of the parties' arguments, the record of documents at issue in this proceeding, and the pertinent authorities, we find that the writ requested by the respondents should be granted as moulded. To the extent that the contested documents are available from original sources extraneous to the medical credentialing process, they are not privileged and are subject to discovery. However, those documents, such as applications for staff privileges, that were generated as part and parcel of the credentialing process are protected by the health care peer review privilege pursuant to the terms of W. Va. Code § 30–3C–3. In light of these rulings, we remand this matter to the Circuit Court of Berkeley County for further proceedings consistent with this Opinion.

I.

## FACTUAL AND PROCEDURAL HISTORY

In August, 1997, Mrs. Chaffins saw her personal physician, Danine A. Rydland, M.D. [hereinafter referred to as "Dr. Rydland"], for medical testing which revealed the presence of abnormal cells. Thereafter, in September, 1997, Dr. Rydland, who had surgical privileges at petitioner Jefferson Memorial Hospital, performed a laser cone biopsy and endocervical curettage upon Mrs. Chaffins at that facility. Mr. and Mrs. Chaffins allege that Mrs. Chaffins' subsequent medical problems were caused by Dr. Rydland's negligent performance of this procedure and ensuing

treatment of Mrs. Chaffins, and that such acts resulted in severe injuries that ultimately required Mrs. Chaffins to undergo a hysterectomy in May, 1998, at the age of 25.

The Chaffins then filed a lawsuit against Dr. Rydland, alleging medical malpractice.[1] They also named Jefferson Memorial Hospital and its medical staff parties defendant to their civil action, claiming that the Hospital had been negligent in extending staff privileges, or credentials, to Dr. Rydland and later renewing such privileges.[2] During the proceedings below, the Chaffins sought discovery of various documents in the Hospital's possession concerning its decision to issue and renew Dr. Rydland's application for staff privileges in an attempt to establish whether the Hospital knew of various professional complaints that had been lodged against Dr. Rydland when it made these decisions. The Hospital claimed that such documents were protected from disclosure by the privilege applicable to health care peer review organizations contained in W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998).[3] Upon the Chaffins' motion to compel discovery of these documents, the Circuit Court of Berkeley County performed an *in camera* review thereof, and, by order entered March 23, 2001, ruled as follows:

> It appears to the Court that the issue is whether certain documents are privileged under the peer review [statute]. The Court in reviewing the documents ... stamped 000001—000137 finds that the only document that falls under the peer review privilege is document 000080. The Court finds that all other documents were generated as part of the credentialing process and are not privileged. The Court further finds that these documents are confidential in nature and certain protections should be afforded these documents.

Based upon the circuit court's determination that the majority of the Hospital's records at issue were not privileged and thus were subject to discovery by the Chaffins, the Hospi-

tal filed this petition for writ of prohibition and requests this Court to prevent the circuit court from enforcing its order.

## II.

### STANDARD FOR ISSUANCE OF WRIT

 This case comes before this Court upon a petition for writ of prohibition. Typically, relief of this nature is reserved for rather extraordinary cases. *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996) ("Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies.... As extraordinary remedies, they are reserved for really extraordinary causes." (internal quotations and citations omitted)). Accordingly,

> " '[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code*, 53–1–1.' Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syl. pt. 2, *State ex rel. Kees v. Sanders*, 192 W.Va. 602, 453 S.E.2d 436 (1994).

Syl. pt. 1, *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W.Va. 316, 484 S.E.2d 199 (1997). In other words,

> " 'this Court will use prohibition ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.' Syllabus Point 1, [in part,] *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979)." Syllabus point 1, in part, *State ex rel. DeFrances v. Bedell*, 191 W.Va. 513, 446 S.E.2d 906 (1994) [ (per curiam) ].

---

**1.** The parties represent that the Chaffins have since settled their claims against Dr. Rydland for approximately $900,000.

**2.** The Chaffins base this claim, in part, upon the fact that a nearby hospital had revoked Dr. Ryd-

land's privileges prior to the incident of alleged malpractice.

**3.** For the text of this statute, see *infra* note 5.

Syl. pt. 1, *State ex rel. Charleston Mail Ass'n v. Ranson,* 200 W.Va. 5, 488 S.E.2d 5 (1997). Thus, when deciding whether prohibitory relief is appropriate in a given matter, we employ a detailed analysis of various criteria:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ Also at issue in the case *sub judice* is the correctness of the circuit court's interpretation and application of the applicable statutory law concerning privileges relating to health care peer review proceedings. As this contention involves a question of law, we apply a plenary review to the circuit court's decision in this regard. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

Having set forth the appropriate standards for issuing the writ requested by the respondents herein, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

This case presents an issue of first impression as to whether a hospital's records regarding the credentialing and/or recredentialing of a staff physician are protected by the West Virginia health care peer review privilege set forth in W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998). In the underlying matter, the circuit court determined that "documents ... generated as part of the credentialing process ... are not privileged," and the Chaffins [4] assert that this ruling was correct. The Hospital, however, contends that such records are protected by the statutory privilege.

■ Ordinarily, this Court does not accept appeals from interlocutory discovery orders or entertain requests for extraordinary relief that have the same purpose and effect as a direct appeal. *See, e.g.,* Syl. pt. 3, *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995) ("Under W. Va.Code, 58–5–1 (1925), appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution of what has been determined."). *See also State ex rel. Ward v. Hill,* 200 W.Va. 270, 275, 489 S.E.2d 24, 29 (1997) (observing that "most discovery orders are interlocutory and reviewable only after final judgment" (citation omitted)). When, however, the lower court's ruling concerns a discovery matter that involves the disclosure of potentially privileged information, we have found the writ of prohibition to be an appropriate vehicle for mounting such a challenge. *See, e.g.,* Syl. pt. 2, *State ex rel. United Hosp. Ctr., Inc. v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 ("'When a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule[s] 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's

---

4. We appreciate the appearance of the Amicus Curiae in this case, the West Virginia Trial Lawyers Association, and will consider its brief in conjunction with the Chaffins' arguments.

original jurisdiction is appropriate.' Syl. pt. 3, *State ex rel. USF & G v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995)."). *Cf.* Syl. pt. 3, *State ex rel. McCormick v. Zakaib,* 189 W.Va. 258, 430 S.E.2d 316 (1993) (" 'A writ of prohibition is available to correct a legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.' Syllabus Point 1, *State Farm Mutual Automobile Insurance Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992)."); *Nutter v. Maynard,* 183 W.Va. 247, 250, 395 S.E.2d 491, 494 (1990) ("Although review of discovery matters is not generally appropriate through extraordinary remedies, we have previously 'granted extraordinary relief where a discovery order presents a purely legal issue in an area where the bench and bar are in need of guidelines ....' *State ex rel. Bennett v. Keadle,* 175 W.Va. 505, [508,] 334 S.E.2d 643, 646 (1985) [ (citation omitted) ]."). Given that the crux of the case *sub judice* is the assertion of such a privilege, we find that it is proper to consider this question upon a petition for writ of prohibition.

■ Turning now to the question raised by the parties, *i.e.,* whether documents generated during a credentialing process are privileged, we must first view the contested statutory language. W. Va.Code § 30–3C–3

(1980) (Repl.Vol.1998) directs, in pertinent part,[5] that

> [t]he proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization ...: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization[.]

Reviewing this statute in our earlier decision in *State ex rel. Shroades v. Henry,* 187 W.Va. 723, 421 S.E.2d 264 (1992), we succinctly restated and interpreted the relevant language:

> *W. Va.Code,* 30–3C–3 [1980] provides that "[t]he proceedings and records of a review organization shall be confidential ... Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such [a review] organization...." The language of the statute grants a privilege to all the records and proceedings of a review organization,

**5.** The entire text of W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998) provides:

> *[t]he proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization* and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: *Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization,* nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not

be asked about his testimony before such an organization or opinions formed by him as a result of said organization hearings: Provided, however, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section: Provided, further, That upon further review by any other review organization, upon judicial review of any finding or determination of a review organization or in any civil action filed by an individual whose activities have been reviewed, any testimony, documents, proceedings, records and other evidence adduced before any such review organization shall be available to such further review organization, the court and the individual whose activities have been reviewed. The court shall enter such protective orders as may be appropriate to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court.
(Emphasis added).

but no privilege attaches to information, documents or records considered by a review organization if the material is "otherwise available from original sources." Syl. pt. 3, *id.* In *Shroades,* however, we did not consider the precise question at issue herein regarding the availability of the privilege to records generated during the credentialing process. Thus, we must determine (1) whether the petitioner Hospital is a "review organization" within the meaning of W. Va. Code § 30–3C–1 (1975) (Repl.Vol.1998) to whom the privilege is applicable and (2) if the Hospital may assert the privilege, what documents are protected thereby.

 To answer the first query, W. Va. Code § 30–3C–1 defines a "review organization" as

> any committee or organization engaging in peer review,[6] including a hospital utilization review committee, a hospital tissue committee, a medical audit committee, a health insurance review committee, a hospital plan corporation review committee, a professional health service plan review committee or organization, a dental review committee, a physicians' advisory committee, a podiatry advisory committee, a nursing advisory committee, any committee or organization established pursuant to a medical assistance program, and any committee established by one or more state or local professional societies or institutes, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. *It shall also mean any hospital board committee, or organization reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto,* and any professional standards review organizations established or required under state or federal statutes or regulations.

(Footnote and emphasis added). When ascertaining the meaning of a statute, we generally accord great weight to the statute's plain meaning in an attempt to give effect to the legislative intent underlying the enactment. "If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery.... " Syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 472 S.E.2d 411 (1996). *Accord* Syl. pt. 1, *Nicholas Loan & Mortgage, Inc. v. W. Va. Coal Co–Op, Inc.,* 209 W.Va. 296, 547 S.E.2d 234 (2001) ("'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968)."); *West Virginia Human Rights Comm'n v. Garretson,* 196 W.Va. 118, 123, 468 S.E.2d 733, 738 (1996) ("A statute is interpreted on the plain meaning of its provision in the statutory context, informed when necessary by the policy that the statute was designed to serve." (footnote and citation omitted)).

The italicized statutory language quoted above clearly indicates that the statutory definition of a review organization includes hospital committees that consider whether staff privileges, or credentials, should be issued to individuals applying for admission to such facilities. W. Va.Code § 30–3C–1. Accordingly, we hold that a hospital committee that is responsible for considering applications for admission to its staff and for issuing staff privileges or credentials in accordance therewith is a "review organization" within the definition of W. Va.Code § 30–3C–1 (1975) (Repl.Vol.1998). As a "review organization," such hospital committee may also avail itself of the health care peer review privilege, codified in W. Va.Code § 30–3C–3 (1980) (Repl. Vol.1998), provided it satisfies the requisite

---

6. W. Va.Code § 30–3C–1 (1975) (Repl.Vol.1998) further defines "peer review" as "the procedure for evaluation by health care professionals of the quality and efficiency of services ordered or performed by other health care professionals, in-

cluding practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, and claims review."

criteria for the assertion of that privilege. Based upon the parties' representations, it appears that the Hospital does have such a committee that evaluated Dr. Rydland's application for staff privileges and considered her application for the renewal of her credentials. Therefore, the Hospital may assert the health care peer review privilege set forth in W. Va.Code § 30–3C–3 to the extent it has satisfied the criteria therefor.

■ The next question we must resolve in our decision of this case is the nature of the documents that are subject to this privilege. At the outset, it should be reiterated that records, documents, and the like that are available from original sources extraneous to the credentialing process are not privileged and, thus, are subject to discovery. W. Va. Code § 30–3C–3 ("[I]nformation, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of [a review] organization[.]"); Syl. pt. 3, in part, State ex rel. Shroades v. Henry, 187 W.Va. 723, 421 S.E.2d 264 ("The language of [W. Va.Code § 30–3C–3] grants a privilege to all the records and proceedings of a review organization, but no privilege attaches to information, documents or records considered by a review organization if the material is 'otherwise available from original sources.'"). Of particular interest to the instant proceeding, however, are documents that are utilized by a hospital's credentialing committee but that have not originated solely within the committee's proceedings, such as applications for initial staff privileges and for the renewal thereof. These types of documents are problematic because they do not fit neatly within the rubric of the peer review privilege: technically, the origin of these documents is with the individual who has applied for staff admission, but these records would not have been created were it not for the hospital's review organization charged with considering the applications and issuing such credentials, whose original records are, in fact, entitled to the statutory privilege.

■ It is not disputed that hospitals enjoy broad discretion when deciding whether a particular staff member's credentials should be revoked or renewed.

The decision of a private hospital to revoke, suspend, restrict or to refuse to renew the staff appointment or clinical privileges of a medical staff member is subject to limited judicial review to ensure that there was substantial compliance with the hospital's medical staff bylaws governing such a decision, as well as to ensure that the medical staff bylaws afford basic notice and fair hearing procedures, including an impartial tribunal.

Syl. pt. 1, *Mahmoodian v. United Hosp. Ctr., Inc.*, 185 W.Va. 59, 404 S.E.2d 750 (1991). Furthermore, such competency determinations are safeguarded, in large part, by the confidentiality provisions of W. Va.Code § 30–3C–3 that accord privilege status to records originating in a hospital's credentialing committee "reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto." W. Va. Code § 30–3C–1. In this regard, "[t]he enactment of West Virginia Code §§ 30–3C–1 to –3 (1993) clearly evinces a public policy encouraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care." Syl. pt. 2, *Young v. Saldanha*, 189 W.Va. 330, 431 S.E.2d 669 (1993).

■ Based upon the Legislature's decision to entrust such important decisions regarding the competency of staff physicians to the hospital review organizations according them these credentials, we believe it would be incongruous to find that applications for staff privileges or the renewal thereof are not protected by the peer review privilege simply because they are created by individuals who are not, themselves, members of the hospital's credentialing committee. Rather these applications are as integral a part of the hospital review organization's proceedings as are those records generated exclusively during the committee's consideration of the subject documents, and indeed, perhaps even more crucial since the applications, themselves, often provide the starting point for the committee's deliberations. Our decision in

this regard is further buttressed by our commitment to uphold the legislative intent of a statutory provision where a literal application of the same would not achieve this goal.

Although courts should not ordinarily stray beyond the plain language of unambiguous statutes, we recognize the need to depart from the statutory language in exceptional circumstances.... Courts, therefore, may venture beyond the plain meaning of a statute in the rare instances in which there is a clearly expressed legislative intent to the contrary ...; in which a literal application would defeat or thwart the statutory purpose ...; or in which a literal application of the statute would produce an absurd or unconstitutional result .... Where warranted a departure must be limited to what is necessary to advance the statutory purpose or to avoid an absurd or unconstitutional result.

*State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994) (citations omitted). *Accord Hutchison v. City of Huntington*, 198 W.Va. 139, 150, 479 S.E.2d 649, 660 (1996) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." (internal quotations and citation omitted)). Thus, " '[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938)." Syl. pt. 3, *State v. Kerns*, 183 W.Va. 130, 394 S.E.2d 532 (1990). Therefore, we hold that an application for the issuance or renewal of staff privileges that is created solely for consideration by a hospital credentialing committee is protected by the health care peer review privilege pursuant to W. Va.Code § 30–3C–3 (1980) (Repl.Vol. 1998).[7]

In consideration of the contrary interpretation accorded to the health care peer review privilege, W. Va.Code § 30–3C–3, by the circuit court, we find that the Hospital has demonstrated an entitlement to prohibitory relief. *See* Syl. pt. 1, in part, *State ex rel. Charleston Mail Ass'n v. Ranson*, 200 W.Va. 5, 488 S.E.2d 5 ("[T]his Court will use prohibition ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate ...." (internal quotations and citations omitted)); Syl. pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 ("In determining whether to entertain and issue the writ of prohibition ... the third factor, the existence of clear error as a matter of law, should be given substantial weight."). Accordingly, we grant the writ of prohibition as moulded and remand this matter to the circuit court for further proceedings consistent with this Opinion.

## IV.

## CONCLUSION

In summary, we find that documents that are available from original sources extraneous to a hospital's credentialing process are not protected by the health care peer review privilege in accordance with our prior holding to that effect in Syllabus point 3 of *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992). However, to the extent that applications for admission to a hospital's staff are created solely for use by the hospital's credentialing committee in determining whether to issue or renew staff privileges or credentials, such applications enjoy the peer review privilege set forth in W. Va.Code § 30–3C–3 (1980) (Repl.Vol.1998). Thus, we grant as moulded the requested writ of prohibition and remand this matter to the Cir-

---

**7.** Other jurisdictions considering this issue have reached a similar result. *See, e.g., Ex parte Krothapalli*, 762 So.2d 836, 838–39 (Ala.2000) (interpreting Ala.Code § 22–21–8(b)); *Humana Hosp. Desert Valley v. Superior Court*, 154 Ariz. 396, 402, 742 P.2d 1382, 1388 (Ct.App.1987) (considering Ariz.Rev.Stat. Ann. § 36–445.01); *Riggs*

*Nat'l Bank v. Boyd*, No. C.A. 96C–05–122–WTQ, 2000 WL 303308, at *6 (Del.Super.Ct. Feb.23, 2000) (basing decision upon Del.Code Ann. tit. 24, § 1768); *Cruger v. Love*, 599 So.2d 111, 114 (Fla.1992) (reviewing Fla. Stat. Ann. §§ 395.011(9) (recodified as Fla. Stat. Ann. § 395.0191(8)), 766.101(5)).

cuit Court of Berkeley County for further proceedings consistent with this Opinion.

Writ granted as moulded.