IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0830
_____

FILED
**June 15, 2023**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ROBERT D. TOLER,
Plaintiff Below, Petitioner,

V.

CORNERSTONE HOSPITAL OF HUNTINGTON, LLC,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Cabell County
The Honorable Gregory L. Howard, Judge
Civil Action No. 19-C-196

AFFIRMED
_____

Submitted: March 21, 2023
Filed: June 15, 2023

Steven S. Wolfe, Esq.                    Richard D. Jones, Esq.
Wolfe, White & Associates                Amy Humphreys, Esq.
Logan, West Virginia                     Jason A. Proctor, Esq.
Attorney for Petitioner                  Flaherty Sensabaugh Bonasso PLLC
                                         Charleston, West Virginia
                                         Attorneys for Respondent

JUSTICE BUNN delivered the Opinion of the Court.

CHIEF JUSTICE WALKER AND JUSTICE WOOTON dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1. "The party seeking the protections of the peer review privilege bears the burden of establishing its applicability by more than a mere assertion of privilege." Syllabus point 3, *State ex rel. Wheeling Hospital, Inc. v. Wilson*, 236 W. Va. 560, 782 S.E.2d 622 (2016).

2. "To determine whether a particular document is protected by the peer review privilege codified at W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), a reviewing court must ascertain both the exact origin and the specific use of the document in question. Documents that have been created exclusively by or for a review organization, or that originate therein, and that are used solely by that entity in the peer review process are privileged. However, documents that either (1) are not created exclusively by or for a review organization, (2) originate outside the peer review process, or (3) are used outside the peer review process are not privileged." Syllabus point 1, *State ex rel. Wheeling Hospital, Inc. v. Wilson*, 236 W. Va. 560, 782 S.E.2d 622 (2016).

3. "The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point. Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be

similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence." Syllabus point 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

BUNN, Justice:

Petitioner Robert D. Toler appeals from orders entered September 15, 2021, and March 20, 2020, by the Circuit Court of Cabell County. In the 2021 order, the circuit court entered judgment on a jury verdict in favor of the Respondent, Cornerstone Hospital of Huntington, LLC ("Cornerstone"). The verdict was rendered in Mr. Toler's lawsuit seeking damages for injuries he sustained while visiting a patient at Cornerstone. The circuit court's 2020 order protected from discovery an incident report in which a Cornerstone employee allegedly described the condition of the patient's room immediately following Mr. Toler's injury. In that order, the circuit court applied the protections afforded by the peer review privilege to the incident report. This ruling also precluded the parties from disclosing the incident report during the trial of this case.

On appeal to this Court, Mr. Toler argues that the circuit court erred by finding that Cornerstone's incident report is protected by the peer review privilege set forth in West Virginia Code §§ 30-3C-1 to -5. Cornerstone contends that its incident report is protected by the peer review privilege because its employee prepared the report exclusively for its own use in its internal quality assurance and facility maintenance review process.

We conclude that the circuit court did not err in ruling that the peer review privilege protects Cornerstone's incident report from discovery. Further, the circuit court did not err by entering judgment on the jury's verdict in favor of Cornerstone because Mr.

1

Toler failed to rebut Cornerstone's assertion of the peer review privilege. Therefore, we affirm the circuit court's March 20, 2020 and September 15, 2021 orders.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On January 7, 2019, Mr. Toler was visiting his girlfriend, who was a patient at Cornerstone. Mr. Toler spent the night in a recliner chair in her room to help take care of her. While getting up from the chair in her room, Mr. Toler fell and broke his femur.[1] When various medical personnel, both at Cornerstone and the emergency room at St. Mary's Medical Center where Mr. Toler was transported for treatment, asked him what had caused the fall, Mr. Toler claimed that his leg gave way and that he thought it was a charley horse. Two Cornerstone nurses heard Mr. Toler fall and, after checking on him, one of the nurses reported the incident to the house supervisor, Nurse Jeff Hall.

Nurse Hall went to the patient's room to check on Mr. Toler and then prepared an incident report documenting his fall. Mr. Toler seems to believe that the incident report supports his later description of the circumstances of his fall as being caused by a roll of tape left on the floor of the patient's room and that Nurse Hall may have reported

---

[1] Although Mr. Toler appears to have broken his femur, which is a leg bone, the record also indicates that Mr. Toler broke his hip, which, it appears, could refer to a break of the top of his femur. *See Femur*, *Mosby's Medical Dictionary* (9th ed. 2013) (defining "femur" as "the **thigh bone**, which extends from the pelvis to the knee").

2

finding a roll of tape on the floor while investigating Mr. Toler's fall.[2] While Mr. Toler subsequently testified at trial that he stepped on a roll of tape and that the roll of tape had caused him to fall and break his femur, none of the medical professionals who treated Mr. Toler immediately following his fall reported in their notes of Mr. Toler's examinations anything about a roll of tape. Rather, the contemporaneous medical records all indicate that Mr. Toler reported that his leg had given out and caused him to fall. The Cornerstone nurses who responded to the patient's room immediately after Mr. Toler's fall also stated that Mr. Toler claimed that his leg had given out, that he thought he had a charley horse, and that he did not mention a roll of tape in describing the circumstances of his fall.

Mr. Toler then sued Cornerstone[3] and sought discovery of the incident report, which Cornerstone claimed is protected by the peer review privilege. *See generally* W. Va. Code §§ 30-3C-1 to -5. Mr. Toler filed a motion to compel disclosure of the incident report, and the circuit court held a hearing on the motion. By order entered March 20, 2020, the circuit court agreed with Cornerstone's claim of peer review privilege and precluded disclosure of the document to Mr. Toler.

---

[2] The record is unclear as to how Mr. Toler deduced the alleged contents of Cornerstone's incident report because Cornerstone claims that this document is privileged, was prepared exclusively for its own internal use, and has not been disclosed to anyone outside of its peer review process. While Cornerstone provided a copy of its incident report under seal for our consideration on appeal, and the circuit court reviewed this document in camera, it does not appear that Mr. Toler has been permitted to view the incident report.

[3] Mr. Toler's complaint is not part of the Appendix Record in this case.

During the trial of Mr. Toler's case against Cornerstone, the court permitted Nurse Hall, who had prepared the incident report, to testify about his personal knowledge of the circumstances surrounding Mr. Toler's fall, as the original source of the contents of the incident report. Nurse Hall's trial testimony did not reference a roll of tape on the floor. Mr. Toler testified that he fell when his leg went out from under him, and he stepped "on a piece of tape." However, no other testimony or evidence adduced at trial mentioned the roll of tape that Mr. Toler alleges caused him to fall and break his femur in the course of treatment for his injuries. The jury, on its verdict form, answered the first question as follows:

> 1. Do you find by a preponderance of the evidence that Robert Toler stepped on a roll of tape causing him to fall on the morning of January 7, 2019?
>
> Yes _____          No __X__

The circuit court entered a final order of judgment on the jury's verdict in favor of Cornerstone on September 15, 2021. Mr. Toler then appealed to this Court.

## II.

### STANDARD OF REVIEW

The issue before the Court is whether the circuit court properly excluded Cornerstone's incident report based on its rulings that the report is protected by the peer review privilege and that the report was not subject to disclosure at trial. In assessing the circuit court's rulings, we must consider both of the circuit court's orders from which Mr.

4

Toler has appealed. We first review the circuit court's March 20, 2020 order that denied

Mr. Toler's motion to compel discovery responses by Cornerstone and found that the peer

review privilege applies to Cornerstone's incident report. Our prior cases recognize that a

circuit court's rulings regarding the application of the peer review privilege involve

multiple standards of review. We review the circuit court's interpretation and application

of the peer review privilege statutes de novo as that determination requires the resolution

of a question of law:

> [A]t issue in the case *sub judice* is the correctness of the circuit
> court's interpretation and application of the applicable
> statutory law concerning privileges relating to health care peer
> review proceedings. As this contention involves a question of
> law, we apply a plenary review to the circuit court's decision
> in this regard. "Interpreting a statute or an administrative rule
> or regulation presents a purely legal question subject to *de novo*
> review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't
> of West Virginia,* 195 W. Va. 573, 466 S.E.2d 424 (1995).

*State ex rel. Charles Town Gen. Hosp. v. Sanders*, 210 W. Va. 118, 123, 556 S.E.2d 85, 90

(2001). We then consider whether the circuit court abused its discretion when determining

if the privilege applies to a particular document because that ruling involves a question of

fact: "The determination of which materials are privileged under *W. Va. Code*, 30-3C-1 . . .

*et seq.* is essentially a factual question and the party asserting the privilege has the burden

of demonstrating that the privilege applies." Syl. pt. 2, in part, *State ex rel. Shroades v.

Henry*, 187 W. Va. 723, 421 S.E.2d 264 (1992).


Next, we review the circuit court's September 15, 2021 order that entered

judgment on the jury's verdict in favor of Cornerstone, which includes the court's pre-trial

rulings on Cornerstone's motions in limine to exclude reference to and testimony about its incident report at trial as well as the court's rulings on the admissibility of evidence during trial. As to a circuit court's evidentiary rulings, we have held that

> [t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995). *Accord State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996) ("The evidentiary rulings of a circuit court . . . are reviewed under an abuse of discretion standard."). We will consider Mr. Toler's assignments of error in accordance with these standards.

## III.

## DISCUSSION

On appeal, Mr. Toler asserts two assignments of error: the circuit court erred (1) by ruling that Cornerstone's incident report is protected by the peer review privilege and (2) by continuing to exclude the report when, according to Mr. Toler, Cornerstone opened the door to the document's disclosure during the trial of this case. We consider both assigned errors in turn.

### *A. Peer Review Privilege*

To determine whether the peer review privilege applies, it is necessary to consider the scope of the privilege. We previously have recognized that, "[t]hrough the enactment of West Virginia Code § 30-3C-3 in 1980,[4] the Legislature imposed confidentiality on all information, documents, and records subjected to review by a medical peer review organization." *Young v. Saldanha*, 189 W. Va. 330, 332, 431 S.E.2d 669, 671 (1993). The Legislature's enactment of this statutory privilege also "clearly evinces a public policy encouraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care." Syl. pt. 2, in part, *id.*

In establishing the parameters of the privilege, the Legislature has defined the terms "peer review" and "review organization."

> "Peer review" means the procedure for evaluation by health care professionals of the quality and efficiency of services ordered or performed by other health care professionals, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit,

---

[4] We note that, during the course of the events giving rise to this appeal, the Legislature amended the peer review privilege statutes, which revised some previously enacted provisions and adopted other new provisions. *See generally* W. Va. Code § 30-3C-1 (eff. Apr. 29, 2019) (revising existing section); W. Va. Code § 30-3C-3 (eff. Apr. 29, 2019) (revising existing section); W. Va. Code § 30-3C-5 (eff. Apr. 29, 2019) (adopting new provision establishing criteria for waiver of peer review privilege). Our consideration of this case is guided by the version of the peer review privilege that was in effect at the time of Mr. Toler's fall in January 2019, and we will refer to those statutory provisions that were effective at that time throughout this opinion.

ambulatory care review, claims review and patient safety review.

W. Va. Code § 30-3C-1 (eff. 2004). "Review organization" is defined, in pertinent part, as

> any committee or organization engaging in peer review, including a hospital utilization review committee, . . . a medical audit committee, . . . a physicians' advisory committee, . . . any entity established pursuant to state or federal law for peer review purposes, and any committee established by one or more state or local professional societies or institutes, to gather and review information relating to the care and treatment of patients for the purposes of: (i) Evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board committee or organization reviewing the professional qualifications or activities of its medical staff . . ., and any professional standards review organizations established or required under state or federal statutes or regulations.

*Id.*

The peer review privilege itself is set forth in West Virginia Code § 30-3C-3 (eff. 1980):

> *W. Va. Code*, 30-3C-3 [1980] provides that "[t]he proceedings and records of a review organization shall be confidential . . . Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such [a review] organization. . . ." The language of the statute grants a privilege to all the records and proceedings of a review organization, but no privilege attaches to information, documents or records considered by a review organization if the material is "otherwise available from original sources."

8

Syl. pt. 3, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264. *See generally* W. Va. Code § 30-3C-3 (eff. 1980). Furthermore,

> [p]ursuant to the plain language of W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 1998), information, documents, and records ordinarily protected by the peer review privilege lose their specter of confidentiality and may be accessed by third parties when (1) said materials are "otherwise available from original sources" or (2) "an individual [has] execute[d] a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions."

Syl. pt. 4, *State ex rel. Brooks v. Zakaib*, 214 W. Va. 253, 588 S.E.2d 418 (2003).[5]

To protect a document from disclosure based upon the protections afforded by the peer review privilege, the party seeking the privilege's protections must request recognition of the privilege and demonstrate its applicability to the document for which protection is sought. "The party seeking the protections of the peer review privilege bears the burden of establishing its applicability by more than a mere assertion of privilege." Syl. pt. 3, *State ex rel. Wheeling Hosp., Inc. v. Wilson*, 236 W. Va. 560, 782 S.E.2d 622 (2016).

> A party wishing to establish the applicability of the peer review privilege, set forth at W. Va. Code § 30-3C-3 (1980)

---

[5] *Accord* Syl. pt. 2, *State ex rel. Wheeling Hosp., Inc. v. Wilson*, 236 W. Va. 560, 782 S.E.2d 622 (2016) ("Where documents sought to be discovered are used in the peer review process but either the document, itself, or the information contained therein, is available from an *original source* extraneous to the peer review process, such material is discoverable from the original source, itself, but not from the review organization that has used it in its deliberations." (emphasis added)); Syl. pt. 3, *Young v. Saldanha*, 189 W. Va. 330, 431 S.E.2d 669 (1993) ("To effect a *waiver* of the privilege of confidentiality which attends information and records properly the subject of health care peer review under West Virginia Code §§ 30-3C-1 to -3 (1993), the Legislature has required that an individual must formally indicate his intent to waive this confidentiality by executing a valid waiver." (emphasis added)).

9

(Repl. Vol. 2015), should submit a privilege log which identifies each document for which the privilege is claimed by name, date, and custodian. The privilege log also should contain specific information regarding (1) the origin of each document, and whether it was created solely for or by a review committee, and (2) the use of each document, with disclosures as to whether or not the document was used exclusively by such committee. Finally, the privilege log should provide a description of each document and a recitation of the law supporting the claim of privilege.

Syl. pt. 4, *Wheeling Hosp.*, 236 W. Va. 560, 782 S.E.2d 622.

Once the party seeking the protections of the peer review privilege has requested its application and submitted the requisite privilege log, the circuit court is then tasked with determining whether the privilege should be applied to preclude disclosure of the document at issue.

To determine whether a particular document is protected by the peer review privilege codified at W. Va. Code § 30-3C-3 (1980) (Repl. Vol. 2015), a reviewing court must ascertain both the exact origin and the specific use of the document in question. Documents that have been created exclusively by or for a review organization, or that originate therein, and that are used solely by that entity in the peer review process are privileged. However, documents that either (1) are not created exclusively by or for a review organization, (2) originate outside the peer review process, or (3) are used outside the peer review process are not privileged.

Syl. pt. 1, *Wheeling Hosp.*, 236 W. Va. 560, 782 S.E.2d 622.

Mr. Toler contends on appeal that the circuit court erred by ruling that the peer review privilege applies to shield Cornerstone's incident report from disclosure. He

10

does not contend that Cornerstone failed to properly request the peer review privilege protection or that Cornerstone's privilege log listing the incident report and describing why it should be protected was inadequate. Neither does Mr. Toler claim, under his first assignment of error, that Cornerstone waived the privilege. Rather, Mr. Toler contends that the circuit court erred in applying the peer review privilege to the facts of this case, which he contends is in the nature of a premises liability case to which the privilege should not apply.

We disagree with Mr. Toler's assertion that the peer review privilege should not apply to this case because of the nature of his claims against Cornerstone, i.e., premises liability claims by a non-patient.[6] The statutes setting forth the peer review privilege do not limit its application to any particular type of case. Neither do the statutes limit the application of the privilege based upon the identity of the person seeking a purportedly protected document's discovery. Rather, the limits of the peer review privilege pertain to the document sought to be protected by its provisions, the manner in which that document has been prepared, and the way in which that document has been used. "Documents that have been created exclusively by or for a review organization, or that originate therein, and that are used solely by that entity in the peer review process are privileged." Syl. pt. 1, in part, *Wheeling Hosp.*, 236 W. Va. 560, 782 S.E.2d 622.

---

[6] Again, Mr. Toler's complaint is not included in the appellate record. *See supra* note 3. However, the nature of Mr. Toler's claims do not appear to be in dispute.

11

Upon Cornerstone's invocation of the peer review privilege and submission of a privilege log detailing why the privilege should apply to its incident report, the circuit court was charged with considering the applicability of the peer review privilege statutes and vested with the discretion to determine whether the privilege should apply to the incident report at issue in this case. *See Charles Town Gen. Hosp.*, 210 W. Va. at 123, 556 S.E.2d at 90; Syl. pt. 2, in part, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264. In its order denying Mr. Toler's motion to compel disclosure of Cornerstone's incident report, the circuit court reached the following conclusions of law in support of its ruling:

> In the instant case, the [c]ourt agrees with the Defendant's [Cornerstone's] assertion that the Occurrence/Incident Report which was prepared by a nurse and reviewed by the Director of Quality Management falls squarely within the statutory requirements [of the peer review privilege statutes] enumerated above.
>
> The [c]ourt finds that the Occurrence/Incident Report at issue was prepared to report a non-routine event that had some potential for injury to a patient or visitor and was intended to help ensure that quality health care is rendered at the hospital by identifying and correcting any problems related to non-routine occurrences.
>
> The [c]ourt also finds that the Plaintiff's [Mr. Toler's] status of a non-patient is irrelevant with regard to the applicability of the peer review privilege in this instance. Therefore, based upon the evidence presented in this matter, and applying the above [peer review privilege] statutes, the [c]ourt finds that the Occurrence/Incident Report in question is not subject to subpoena or discovery proceedings and is precluded from admissibility in evidence pursuant to the Peer Review [Privilege] Statute.

12

All of these findings are consistent with the Legislature's recognition of a peer review privilege in West Virginia Code § 30-3C-3 and this Court's further clarification of the scope of that privilege. *See, e.g.*, Syl. pt. 1, *Wheeling Hosp.*, 236 W. Va. 560, 782 S.E.2d 622; Syl. pt. 3, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264. We do not find that the circuit court erred or abused its discretion in finding that the peer review privilege applies to protect Cornerstone's incident report from disclosure. The circuit court properly ruled that the peer review privilege does not except certain types of cases from its application. The court further found that the incident report had been prepared exclusively for Cornerstone's internal review process and that the report had been used solely in that review process and not disclosed or disseminated outside of Cornerstone's internal review. Therefore, we affirm the circuit court's March 20, 2020 order ruling that the peer review privilege precludes the disclosure of Cornerstone's incident report.[7]

---

[7] This result is also consistent with the amendments to West Virginia Code § 30-3C-3 that were enacted shortly after the incident at issue in this case. In West Virginia Code § 30-3C-3(a)(1) (eff. 2019), the Legislature adopted a narrow exception to allow the disclosure of "[n]ursing home . . . incident or event reports . . . pertaining to the plaintiff of that civil action, or reports of same or similar incidents within a reasonable time frame of the events at issue in the civil action[.]" Nursing home incident reports, in general, remain subject to the peer review privilege except as directed by § 30-3C-3(a)(1), and there is no other exception to permit the disclosure of other types of incident reports that otherwise would be protected by the peer review privilege. If we were to adopt Mr. Toler's position regarding the peer review privilege's inapplicability to Cornerstone's incident report in this case because he is a non-patient asserting a premises liability claim, we would effectively be allowing the disclosure of an incident report that otherwise would be protected by the peer review privilege *without* a statutory exception that permits its disclosure. This result would essentially require that we read into the peer review privilege legislation additional terms that the Legislature did not include. We cannot rewrite legislation to include provisions that the Legislature chose not to adopt. *See* Syl. pt. 11, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013) ("It is not for this Court arbitrarily to read into a statute

### B. Effect of Cornerstone Witness Testimony on
### Continued Assertion of Peer Review Privilege

In his second assignment of error, Mr. Toler argues that the circuit court erred by allowing two Cornerstone employees to testify at trial and that, by virtue of their testimony, the incident report should have been disclosed to Mr. Toler for his use during the trial. Cornerstone denies that the witnesses it called defeated its assertion of the peer review privilege protection for the incident report.

After the circuit court entered its order in 2020 ruling that Cornerstone's incident report is protected by the peer review privilege, the court considered Cornerstone's motions in limine prior to the jury trial. By order entered August 24, 2021, the circuit court ruled that privileged material, which would include Cornerstone's incident report, could not be referenced during the trial, and Mr. Toler did not object to this ruling:

> **MOTION IN LIMINE TO EXCLUDE TESTIMONY AND REFERENCES TO PRIVILEGED MATERIAL**
>
> As to Defendant's [Cornerstone's] "*Motion In Limine to Exclude Testimony And References To Privileged Material*," Plaintiff [Mr. Toler] did not object to this Motion. This [c]ourt **FINDS** the motion well taken, and, for the reasons set forth in the Motion, it is hereby **GRANTED**.

---

that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted.").

By virtue of Mr. Toler's failure to object to the exclusion of testimony about and references to privileged material, including Cornerstone's incident report, from the trial, Mr. Toler has waived his objection to the circuit court's exclusion of testimony about and references to the incident report at trial. *See* Syl. pt. 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.").

Mr. Toler further contends that, because Nurse Hall was permitted to testify at trial, the contents of Cornerstone's incident report should have been disclosed at trial as Nurse Hall's contemporaneous notes of his conversation with Mr. Toler. However, the peer review privilege permits the disclosure of original source information without defeating the assertion of the privilege. *See generally* W. Va. Code § 30-3C-3; Syl. pt. 2, *Wheeling Hosp.*, 236 W. Va. 560, 782 S.E.2d 622; Syl. pt. 4, *Brooks*, 214 W. Va. 253, 588 S.E.2d 418; Syl. pt. 3, *Shroades*, 187 W. Va. 723, 421 S.E.2d 264. Here, Nurse Hall testified regarding the original source of the incident report he prepared: his conversation with Mr. Toler about the circumstances of the fall and his observations about the patient's room in which Mr. Toler's fall occurred. During his testimony, Nurse Hall did not reference the incident report he prepared for Cornerstone. Nurse Hall's testimony was consistent with the original source exception to the peer review privilege and the circuit court's rulings finding that the incident report is protected by the peer review privilege and excluding any

15

references to or testimony about privileged materials at trial. Therefore, Mr. Toler is not entitled to relief on this basis.

Mr. Toler additionally contends that the testimony of Cornerstone's corporate representative, Nurse Brandon Gagnon, chief nursing officer, "opened the door" to the incident report's admissibility at trial. Nurse Gagnon testified as a witness called by Mr. Toler. During Nurse Gagnon's direct testimony, counsel for Mr. Toler proposed a hypothetical situation of water causing a fall and asked the following question, which Nurse Gagnon answered:

> Q. [by Mr. Toler's counsel]: . . . Where would you document that the fall had occurred due to water or some other obstruction on the floor?
>
> A. [by Nurse Gagnon]: It would be documented through an incident reporting process.

(Emphasis omitted). When Mr. Toler's counsel then asked, "And was that done in this case?," Cornerstone's counsel immediately objected based on the court's earlier rulings excluding references to or testimony about materials the court had ruled were privileged and, thus, not subject to disclosure. The court sustained Cornerstone's objection, and Nurse Gagnon continued his testimony without referencing Cornerstone's incident report that Nurse Hall prepared after Mr. Toler's fall. On appeal, Mr. Toler contends that the circuit court's continued exclusion of the incident report after Nurse Gagnon had alluded to Cornerstone's incident reporting process constituted error because, Mr. Toler avers, Nurse Gagnon's testimony "opened the door" to the incident report's disclosure. This argument

16

misconstrues the concept of "opening the door" to the admission of otherwise inadmissible evidence.

In support of his argument, Mr. Toler cites *State v. Baker*, 230 W. Va. 407, 738 S.E.2d 909 (2013), which discusses the "opening the door" doctrine in the context of criminal cases. *See id.*, 230 W. Va. at 412, 738 S.E.2d at 914 ("The opening the door 'doctrine operates to prevent a defendant from successfully excluding from the prosecution's case-in-chief inadmissible evidence and then selectively introducing pieces of this evidence for the defendant's own advantage, without allowing the prosecution to place the evidence in its proper context.' *State v. James*, 144 N.J. 538[, 554], 677 A.2d 734, 742 (1996)."). We have also discussed this principle in the civil law context, and explained its operation as follows:

> First, we note that the phrase "'[o]pening the door' is also referred to as the doctrine of 'curative admissibility.'" *United States v. Rucker*, 188 Fed. Appx. 772, 778 (10th Cir. 2006). *See also* 1 Louis J. Palmer, Jr., Robin Jean Davis, and Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 106.04 at 158 (6th ed. 2015) ("The phrase 'opening the door' is used by most courts to refer to the curative admissibility rule.").

*Miller v. Allman*, 240 W. Va. 438, 450, 813 S.E.2d 91, 103 (2018). We further have explained how a party may invoke the curative admissibility rule:

> The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has "opened the door" by introducing similarly inadmissible evidence on the same point. Under this rule, in order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) The original evidence must

17

> be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

Syl. pt. 10, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). In other words, "[t]he doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." *James*, 677 A.2d at 742.

This explanation of "opening the door" makes clear that when a party's *opponent* introduces inadmissible, prejudicial evidence, the party aggrieved by the admission of that evidence is permitted to introduce otherwise inadmissible evidence to rebut the *opponent's* improper evidence. Here, Mr. Toler's opponent, Cornerstone, did not elicit the reference to Cornerstone's incident reporting process from Nurse Gagnon. Mr. Toler elicited that information during his counsel's direct examination of Nurse Gagnon. As the party who prompted Nurse Gagnon's disclosure of the incident reporting process, Mr. Toler is not entitled to benefit from the purportedly improper reference to the incident

18

report he occasioned.[8] Therefore, we find that Mr. Toler is not entitled to relief on this basis.[9]

---

[8] Rather, this scenario is more reminiscent of the "invited error" doctrine than the "opening the door" doctrine upon which Mr. Toler relies. *See State v. Crabtree*, 198 W. Va. 620, 627, 482 S.E.2d 605, 612 (1996) ("'Invited error' is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences."). *See also* Syl. pt. 2, *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971) ("An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case.").

[9] Though not assigned as error by Mr. Toler, we would be remiss if we did not acknowledge that Nurse Hall, during his direct testimony by Cornerstone's counsel, also briefly referenced the incident reporting process.

> Q. [by Cornerstone's counsel]: Had Mr. Toler told you on the morning of January 7th that when he stood up that he stepped on a roll of tape and it caused him to fall, what would you have done?
>
> A. [by Nurse Hall]: For one thing, I would have looked for a roll of tape. Right? I would obtain that object or whatever the tape – in this instance, I would have got that and I would have used it for a foundation to do a report and find out what ways we could better this process and prevent this from going on any further and happening to the next patient.

(Emphasis omitted). This inquiry posed a hypothetical question to Nurse Hall, much like the hypothetical water question Mr. Toler's counsel asked Nurse Gagnon, because Nurse Hall had earlier testified that Mr. Toler had not mentioned a roll of tape as causing or contributing to his fall when Nurse Hall spoke with Mr. Toler shortly after he fell. Immediately after the quoted exchange, Cornerstone's counsel concluded her direct examination of Nurse Hall. Mr. Toler's counsel replied, "No cross, your Honor"; then asked Nurse Hall four questions, none of which pertained to the reporting process Nurse Hall had mentioned in his testimony; and allowed Nurse Hall to be excused as a witness.

Finally, Mr. Toler suggests that the jury's questions to the court during its deliberations necessitated the disclosure of Cornerstone's incident report. During the jury's deliberations, it sent the following questions to the circuit court: "Is there an initial incident report? Was it filed? Who filed it? Can we have a copy of said incident report?" After meeting with counsel in chambers, determining that the peer review privilege continued to protect the incident report from disclosure, and that the granted motion in limine precluded reference to the incident report, the circuit court gave this answer to the jury:

> I can simply tell you that everything that was admissible evidence in this case has been discussed prior to the jury ever being here. We've had legal arguments on things, and there are things that are allowed to be in front of the jury and things that are not. Everything that you-all have to deliberate on and consider has been entered into evidence, and so you're not to speculate as to what other pieces of evidence might be out there or might not be out there. You're only to consider things that have been put in front of you . . . . And we've made sure that you have all of the evidence that you're supposed to have legally to make this decision and reach your verdict; so don't speculate on any other things that may be missing at this point. You just work with what you have and reach your verdict based on that information.

We find that these questions from the jury clearly indicate that it was not aware that an incident report had been prepared in this case given that the first question was whether the

---

For the same reason we find that Mr. Toler has waived any objection to the exclusion of testimony about or reference to Cornerstone's incident report because he failed to object to the circuit court's decision to grant Cornerstone's motion in limine, we similarly find that Mr. Toler has waived any objection he may have had to Nurse Hall's hypothetical reference to the incident reporting process because he failed to object to Nurse Hall's reference to Cornerstone's reporting process or elicit further testimony regarding this procedure on cross-examination of this witness. *See* Syl. pt. 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996).

incident report existed. The circuit court's answers to the jury's questions were consistent with its prior rulings finding that the peer review privilege shielded Cornerstone's incident report from disclosure and that the parties were not permitted to reference or elicit testimony about the incident report at trial, which we have found were proper. We likewise find that the circuit court did not abuse its discretion in answering the jury's questions in this manner and continuing to apply the peer review privilege to protect Cornerstone's incident report. Accordingly, we affirm the circuit court's September 15, 2021 order entering judgment in favor of Cornerstone on the jury's verdict.

## IV.

## CONCLUSION

We conclude that the circuit court did not err by ruling that the peer review privilege applies to preclude the disclosure of Cornerstone's incident report. Therefore, we affirm the circuit court's March 20, 2020 order that ruled that the incident report is protected by the peer review privilege and the court's September 15, 2021 order entering judgment on the jury's verdict in favor of Cornerstone.

Affirmed.